UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA DIANE COOPER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. 1:21-cv-01767-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 15)** |

**I.　　Introduction**

Plaintiff Lisa Diane Cooper ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 15–17.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.

**II.　　Factual and Procedural Background[2]**

On October 23, 2019 Plaintiff applied for supplemental security income. The application was denied initially on March 3, 2020 and on reconsideration on May 29, 2020. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on April 20, 2021. AR 33–60. On May 12, 2021 the ALJ issued an unfavorable decision. AR 12–32. The Appeals Council denied review on October 21, 2021. AR 1–6. On December 14, 2021, Plaintiff filed a complaint in this Court.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 7 and 9.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.     The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date.  AR 17.  At step two the ALJ found that Plaintiff had the following severe impairments: osteoarthritis and meniscal tears of the right knee status post arthroscopy; degenerative disc disease of the lumbar spine; arthritis and foraminal stenosis of the cervical spine; status post non-displaced malleolar fracture of the left ankle in June 2018; small fiber neuropathy; right lower extremity large fiber neuropathy; and obesity, status post-gastric bypass.  AR 18.  The ALJ also found at step two that Plaintiff's migraines and depression were not severe impairments, and that Plaintiff's alleged bilateral hand weakness was not attributable to a medically determinable impairment.  AR 20.  At step three the ALJ found that Plaintiff did not have an impairment, or combination thereof, that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 20.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. 416.967(a) with the following additional restrictions: requires a cane for ambulation and balance; requires the ability to sit and stand at will with up to 5 percent of the workday off task for position changes; can climb ramps occasionally but otherwise cannot climb; can perform

postural activities occasionally; must avoid concentrated exposure to temperature extremes; cannot work consistently in wet or damp conditions; must avoid concentrated exposure to vibration and workplace hazards such as unprotected heights and dangerous moving mechanical parts.  AR 20–25.

At step four the ALJ found that Plaintiff could not perform her past relevant work as an expense clerk.  AR 25.  At step five, in reliance on the Vocational Expert's (VE's) testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: food and beverage order clerk, final assembler of optical goods, and addresser.  AR 27.  Accordingly, the ALJ found that Plaintiff was not disabled at any time since her application date of October 23, 2019.  AR 27.

**V.     Issues Presented**

Plaintiff asserts three claims of error: 1) the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction; 2) the ALJ failed to provide adequate consideration and discussion of the functional impact of her morbid obesity; and 3) the ALJ erred in determining that Plaintiff had no medically determinable impairment affecting the function of her hands.

**A.     Plaintiff's Allegations of Pain and Physical Dysfunction**

**1.     Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a

medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3).

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p. An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2. **Analysis**

The ALJ found there were medically determinable impairments which could reasonably be expected to cause the alleged symptoms. AR 23. The ALJ found no malingering. AR 23. As such, the ALJ was required to identify clear and convincing reasons for rejecting Plaintiff's symptom allegations.

Plaintiff underscores the following statements from her hearing testimony: 1) she was unable to work due to her right knee and low back impairments; 2) she had sharp pain radiating down her left lower extremity from her back, with associated numbness; 3) she could stand for only 5 minutes at a time, sit for 10 to 15 minutes before she needed to shift positions or lay flat; 4) she

could walk only 10 to 15 minutes before she needed to sit; 5) she had small and large fiber neuropathy causing numbness to fingertips and feet for which she took two different medications. Br. at 7-8. Doc. 15 (citing AR 41–49). She underscores additional related statements from her function report: 1) that she had difficulty standing and sitting for any length of time due to pain, and 2) walking was very painful, she could walk only 10 minutes before requiring a break. *Id.* (citing AR 218).

The allegation that Plaintiff cannot work due to her back and knee impairments is a broad assertion that goes to the ultimate issue of disability. It does not speak to the existence of any specific functional limitation, nor address any of the subordinate considerations that inform whether the disability standard has been met. Granted, the ALJ is the one who posed the question at the outset asking why the claimant believes she cannot work, but that was perhaps more to set the tone for the hearing and narrow the scope of issues for discussion to the specific impairments Plaintiff contends are disabling.

Plaintiff's characterization of the pain as sharp, radiating pain with associated numbness is also of limited relevance in that it does not address the intensity, persistence, or limiting effects of the pain. The RFC is not a representation of the most one can do while remaining pain free; it is "the most you can do despite your limitations." 20 C.F.R. 416.945(a)(1).

Plaintiff also emphasizes her testimony regarding intolerance for extended durations of sitting, standing and walking. But Plaintiff does not explain in what respect that testimony suggested greater limitations than the ALJ incorporated into the RFC, namely: sedentary exertional work; cane use for ambulation and balance; and the ability to change positions at will provided no more than 5% of the work day was spent off task changing positions. Because the RFC reasonably accounted for Plaintiff's testimony in those respects, there is no basis to find an error. *See Juniel v. Saul*, No. 1:20-CV-0421 JLT, 2021 WL 2349878, at *7 (E.D. Cal. June 9, 2021) ("Plaintiff fails

to show this limitation to which he testified . . . was not properly accounted for in his residual functional capacity . . .").

There is at least one respect in which her testimony does suggest greater restrictions than the RFC. She testified she can only carry about 5 pounds, whereas sedentary work requires the ability to carry up to 10 pounds occasionally and less than 10 pounds frequently. Further, Plaintiff's main assertion appears to be, specific functional abilities aside, that the intensity, persistence and limiting effects of her symptoms are sufficiently debilitating that she could not sustain gainful employment. Accordingly, the Court will address the ALJ's associated reasoning.

First, the ALJ found that although Plaintiff's activities were somewhat limited, "some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." AR 22. The ALJ specifically highlighted Plaintiff's function report and the report from her daughter noting she: performed personal grooming activities;; prepared simple meals; performed household chores; went places alone; drove a vehicle; and went shopping. *Id.* (citing Ex. 4E). On balance, the ALJ concluded that "The claimant's ability to participate in such activities undermines the claimant's allegations of disabling functional limitations." *Id.*

Plaintiff disputes the ALJ's reliance on function reports completed about 1.5 years prior to the ALJ's decision, reports which were not necessarily reflective of subsequent functioning particularly given evidence that the underlying impairments worsened (for which she cites records describing her "progressing moderate to severe tricompartmental osteoarthritis", and her self-reported "worsening" pain following her knee surgery). Br. at 10-11 (citing AR 619, 686). Plaintiff contends the ALJ failed to inquire into her daily activities at the hearing to determine the scope of those activities, and the record does not support the ALJ's view of her activities.

      It is true that the Ninth Circuit has recently emphasized the importance of considering how a claimant's symptoms change over time. *See, Smith v. Kijakazi*, 14 F.4th 1108, 1116 (9th Cir. 2021). (finding the ALJ "erred by seeking only to reach a single disability determination for the entire multi-year period, thereby failing to consider whether Smith was disabled for only a qualifying, early portion of that time."). *Id.* It is also true that Plaintiff's condition was diagnosed as "progressive" osteoarthritis. However, that is not compelling evidence that her functionality had materially worsened 1.5 years after completing her function report. Conditions such as osteoarthritis and degenerative disc disease are by their very nature progressive such that they will necessarily worsen to some degree with the passage of time. They are also very common impairments among social security applicants and the general population. One and a half years is not an unusually long passage of time between the date Plaintiff completed her function report at the agency level in November of 2019, and the ALJ's hearing decision in May of 2021. In writing her decision, if the ALJ could not rely on evidence 1.5 years in the past in cases involving progressive conditions, the ALJ's duty to further develop the record could conceivably persist indefinitely.

      Moreover, if Plaintiff's functionality as of the ALJ hearing date was significantly reduced compared to 1.5 years earlier when she completed her function report, counsel (not the ALJ) had the primary obligation to develop the testimony regarding her more recent functionality. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted).

      Plaintiff emphasizes additional contextual information concerning her activities from her own function report as well as the function report completed by her daughter, including: 1) with

respect to household chores she did no more than 6 hours per week including laundry, cleaning and dusting but required help with anything more than 5 pounds; 2) with respect to her personal grooming, it took a long time, she could not bend over to shave, and she wore elastic clothes because they were easier to put on; 3) with regards to meal preparation, Plaintiff and her daughter reported that Plaintiff merely prepared snacks or ate leftovers; and 4) she only went shopping once a month. AR 204–16.

Plaintiff contends the evidence as a whole establishes that she did nothing more than minimal personal care with difficulty, limited household chores, and rare shopping. On balance Plaintiff contends that "Contrary to the ALJ's finding, such minimal activities did not show that Plaintiff could perform full-time gainful activity on a consistent basis." But this misconstrues the legal standard by placing the burden on the ALJ to identify affirmative evidence establishing Plaintiff's ability to work.

The applicable standard is stated in *Orn*. An ALJ can rely on a claimant's daily activities as a basis for discrediting a claimant's testimony if: (1) the daily activities contradict the claimant's other testimony; or (2) "a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The activities identified by the ALJ, particularly with the contextual information emphasized by Plaintiff from the same function report the ALJ cited, do not necessarily suggest Plaintiff spent a "substantial part of her day engaged in pursuits involving the performance of physical functions transferrable to a work setting," as described in *Orn* and quoted above. However, the nature of the work setting at issue is a reduced range of sedentary exertional work with occasional postural activities and unlimited position changes. The physical demands of that type of work are not substantially more onerous than the demands of the activities Plaintiff

performed with some degree of regularity, including 6 hours per week of light household chores, simple meal preparation, and monthly shopping trips.

As to the alternative avenue identified in *Orn* ("the daily activities contradict the claimant's other testimony") some precedent suggests the contradiction must be fairly direct, and the ALJ must engage in a matching exercise and explain, "which daily activities conflicted with which part of Claimant's testimony." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Other precedent suggests the contradiction need not be direct and no matching exercise is required. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

Although Plaintiff's activities were rather limited (more so than in *Valentine*), it bears repeating that the RFC herein was comparably limiting, finding Plaintiff could perform a reduced range of sedentary work with occasional postural activities, cane use for ambulation and balance, and at-will position changes. The only respect in which the testimony was not accommodated appears to be the 5 pound weight lifting restriction identified by Plaintiff and corroborated by her daughter, as compared to the exertional requirements of sedentary work which involve occasionally lifting up to 10 pounds. AR 47, 207. In that respect the testimony was significant and Plaintiff's daily activities were not a basis to reject this testimony because she and her daughter both consistently reported that limitation and none of her identified activities establish or suggest an ability to lift more than 5 pounds.

Notwithstanding, the ALJ's implicit rejection of that restriction (by assessing an RFC for sedentary work) was supported not only by the objective medical evidence as described below

(which is admittedly not a standalone basis to reject testimony), but also by the opinions of state agency doctors who opined at the initial level that Plaintiff could perform light exertional work (occasionally lift 20 pounds and frequently lift 10), and who opined at the reconsideration level that Plaintiff could perform sedentary work.  Ex. 1A, 3A.

As to the objective medical record, Plaintiff disputes the accuracy and sufficiency of the ALJ's conclusion regarding same.  The ALJ initially cited exhibits 4F, 5F, 10F, 13F, 17F, and 18F, for the proposition that "claimant consistently presented with a normal gait and normal motor strength and sensation in the lower extremities." AR 22.  That is admittedly a broad range of pages to cite for a generalized proposition. Later in the opinion however, the ALJ provided specific examples with pin citations to at least 10 physical examinations at regular intervals between August 2019 and December 2020.  AR 23 (citing AR 368; 417, 421, 477, 501, 504, 645, 650, 660, 670, 675, 698, 720).

Plaintiff emphasizes the fact that some of the same examinations the ALJ cited, as well as other examinations in the record, showed abnormal gait, reduced lumbar range of motion, pain with motion testing, positive Patrick's Test, positive facet loading test, tenderness to palpation of her lumbar paraspinal and facet joints, pain with right knee range of motion, appreciable effusion, laxity with valgus and varus stress testing, and palpable tenderness to the joint line.  Br. at 13 (citing AR 360, 363-364, 368, 372, 376, 381, 385, 389, 396, 400, 405-406, 417, 421, 502, 507, 644-645, 670, 719-720, 728-729).  Plaintiff disputes the notion that her gait, strength and sensation were "consistently normal", and contends that the ALJ erred in elevating normal findings in those respects above abnormal findings in others.

This argument however is not persuasive.  The ALJ cited most, if not all of the examinations Plaintiff cites and acknowledged the normal and abnormal findings alike.  The ALJ did not merely selectively pick from the record to Plaintiff's disadvantage.  Even if the ALJ was not entirely

accurate in finding "consistently" normal gait, the record did show at least as many normal gait findings as abnormal gait findings.

As to strength and sensation, Plaintiff identifies no abnormal examination findings. Plaintiff is correct that the normal findings in those respects do not trump all other abnormal diagnostic and physical examination findings, range of motion deficits, joint laxity, tenderness to palpation, and positive provocation signs. It is not sufficient however, for Plaintiff to establish that her view of the record is supportable. Rather, Plaintiff must establish that the ALJ's view of the record is unsupportable, and therefore Plaintiff's view must control. If the evidence can reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

In sum, the records cited by Plaintiff and the ALJ generally showed normal findings as to strength and sensation, abnormalities as to provocation testing, tenderness to palpation, reduced range of motion, and mixed findings as to gait. Those examination findings do not establish or significantly suggest that Plaintiff is incapable of performing sedentary work with occasional lifting of up to 10 pounds, cane use for ambulation, occasional postural activities, and at-will position changes between sitting to standing. Plaintiff's first argument identifies no error in the ALJ's treatment of Plaintiff's testimony specifically, or the formulation of the RFC more generally.

### B.   The Functional Impact of Plaintiff's Obesity

As Plaintiff explains, obesity was previously included as an impairment under the Listings, but was removed following the Ninth Circuit's ruling in *Celaya*. *See Cruz v. Colvin*, Case No. 12-600-AJW, 2013 WL 1912786, *2 (C.D. Cal. May 8, 2013) (citing *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003)). However, the Commissioner still directs that an ALJ must determine whether obesity, alone or in combination with other impairments, causes any limitations and must explain how that conclusion is reached. SSR 19-2p.

As noted by the ALJ:

> The Clinical Guidelines recognize three levels of obesity. A BMI in the range of 30-34.9 is Level I. A BMI in the range of 35-39.9 is Level II. A BMI greater than or equal to 40 is Level III, which is considered "extreme" obesity and represents the greatest risk for developing obesity-related impairments.

AR 18.

As the ALJ noted, Plaintiff's height was 5 foot 3 inches and her weight ranged from 230 to 263 pounds during the period under review, equating to a BMI between 40.7 to 46.6, far in excess of the 30.0 threshold for obesity generally, and substantially in excess of the 40.0 threshold for Category III ("extreme") obesity.

The ALJ found at step two that Plaintiff's "obesity, status post gastric bypass" was a severe impairment and stated that, "The claimant's weight, including the impact on her ability to ambulate, as well as her other body systems, has been considered within the functional limitations determined herein." AR 17.

Plaintiff ultimately concludes the ALJ failed to provide a specific discussion of how she considered the same, and thus meaningful review by the Court is therefore precluded. As to the medical evidence on point, Plaintiff cites treatment notes indicating Plaintiff felt she could not exercise due to knee pain, was not a candidate for a revision gastric bypass, failed knee arthroscopy due to her weight, needed to lose 73 pounds before a total knee replacement, and had a poor knee prognosis greatly compounded by her weight. AR 623, 626, 659, 679.

Plaintiff argues this evidence clearly establishes her weight contributed to her physical dysfunction and exacerbated her knee impairment. The ALJ did not disagree. Granted, the ALJ's step two discussion quoted in isolation does appear to fall short of an "explanation" of the functional impact of Plaintiff's obesity as seemingly required by the language of SSR 19-2p. But at step four the ALJ discussed in detail Plaintiff's lumbar spine and knee impairments, associated imaging and diagnostics, physical examination findings regarding strength, gait, and range, and her related

testimony. Those are the very impairments she contends are exacerbated by her obesity. It's not clear how else the ALJ would articulate what she considered the functional impact of obesity, other than perhaps addressing the affected bodily systems.

Plaintiff's discussion of medical evidence indicating a poor future prognosis for her knee impairment is of little relevance to the current claim. That argument could be raised in response to an adverse finding regarding the 12-month durational requirement, for example, but there is no finding here that her knee impairment and associated limitations would not persist for at least 12-months if not indefinitely. The issue is what those limitations are for the period under review. Future records documenting worsening of the impairment would be the subject for a future claim.

Although Plaintiff underscores that obesity previously was included in the listings (perhaps solely by way of background), that is no longer the state of the law. The ALJ evaluated Plaintiff's functionality as evidenced by the records for the relevant period under review. The ALJ ultimately assessed an RFC for a reduced range of sedentary work with occasional postural activities and at-will position changes.

In sum, Plaintiff needed to tether her argument to some evidence of functional limitations beyond what the ALJ included in the RFC. Plaintiff cites no precedent suggesting a certain level of specificity is required by the ALJ in discussing limitations stemming from (or exacerbated by) obesity, nor does Plaintiff posit any theory of her own as to what such a discussion would have been in this case, or what restrictions would result. Thus, she identifies no error in the ALJ's analysis of her obesity.

### C. Plaintiff's Hand Impairment

The ALJ made the following pertinent findings:

> The undersigned has considered the claimant's alleged symptoms of weakness of the bilateral hands. A medically determinable impairment may not be established solely based on symptoms alone, or on the claimant's allegations regarding symptomatology (20 CFR 416.908). There must be evidence from an acceptable

medical source in order to establish the existence of a medically determinable impairment. Although the claimant answered intake questions indicating numbness or tingling of the hands or feet at several pain management visits, the treatment notes for those days do not indicate any physical examination of the hand or arms at those visits (e.g. Ex. 4F/22-23, 26-27, 30-31, 35, 37-38. In September 2020, the claimant complained of bilateral hand tingling and weakness (Ex. 17F/2). An EMG was ordered, but the record does not show that it was ever done. From April to December 2020, the claimant complained of tingling and weakness, but denied hand pain, and no physical examination of the claimant's hands are reflected in the record (e.g., 18F/23).  Here, there are insufficient records of clinical signs, diagnostic findings or laboratory testing to substantiate the existence of a medically determinable impairment. Accordingly, the undersigned finds there was a lack of objective evidence to substantiate the existence of a medically determinable impairment concerning the claimant's hands.

AR 17.

Plaintiff disputes the ALJ's finding that there was no evidence of a medically determinable impairment (MDI) related to her hands, and disputes the ALJ's conclusion that no limitations were warranted with respect to her ability to handle, grasp, finger or feel.  Plaintiff cites evidence that she was diagnosed with small fiber neuropathy, and was getting treatment for this condition by way of two medications (Mobic and Topamax).  AR 360, 381, 385, 389. She further cites evidence that the diagnosis of small fiber neuropathy was confirmed through an epidermal nerve fiber density skin lesion biopsy in December 2019.  AR 509, 515.

The ALJ did not disagree.  The ALJ found she had small fiber neuropathy which was a severe impairment, though the ALJ did not discuss its impact on Plaintiff's hands.  To establish harmful error however, Plaintiff needs to cite evidence suggesting small fiber neuropathy affected the function of her hands.

As Plaintiff acknowledges, small fiber neuropathy is a disorder that causes symptoms that "are primarily sensory in nature and include unusual sensations such as pins-and-needles, pricks, tingling and numbness."[4]  As a primarily sensory disorder, Plaintiff's diagnosis of small fiber

---

[4] See John Hopkins Medicine, Neurology and Neurosurgery Small Fiber Sensory Neuropathy,   available at https://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/peripheral_nerve/conditions/small_fiber_s

neuropathy does not tend to corroborate the existence of weakness, nor does Plaintiff identify any associated examination findings in the record to corroborate alleged weakness. The resource Plaintiff cites further states that "Since SFSN usually does not involve large sensory fibers that convey balance information to the brain or the motor nerve fibers that control muscles, these patients do not have balance problems or muscle weakness." *Id.*

Further, Plaintiff testified to numbness and prickling, but she did not testify in so many words that the condition causes disabling pain. Further, she did not organically or independently testify that her sensory symptoms cause functional limitation. Hearing counsel asked, "how long can you use them [your hands] for grasping, and typing, things like that, before you have to stop and rest them." AR 49. She responded she could hardly type at all, no more than five minutes and her typing speed is not what it used to be. AR 49. But this does not logically follow from the sensory nature of the impairment as described in the resource Plaintiff quotes from Johns Hopkins Medicine.

The testimony strictly construed establishes only that she did indeed stop every 5 minutes due to numbness and prickling, and that the symptoms reduced her typing speed. The testimony, even if accepted, does not establish that she unavoidably required a break every 5 minutes for relief from her hand symptoms. There is also no reason to conclude that such a break would provide any relief from the symptoms of a systemic disorder of the small fibers of the peripheral nervous system (as compared to carpal tunnel syndrome, for example, caused by a focal, mechanical compression of the median nerve at the level of the wrist, often worsened with repetitive wrist activity or suboptimal wrist positioning for prolonged periods of time).

Plaintiff also cites the August 4, 2020 EMG of Plaintiff's lower extremities which showed the presence of <u>large</u> fiber neuropathy. AR 732. Although the EMG involved Plaintiff's lower

---

ensory_neuropathy.html.

extremities, Plaintiff argues the presence of large fiber peripheral polyneuropathy in her legs suggests that the disorder could also be affecting her upper extremities given her reports of numbness in her upper and lower extremities.[5] Although that is a possibility, there was no EMG of her upper extremities and therefore no basis to confirm the hypothetical. Further, even assuming the presence of large fiber peripheral neuropathy in her upper extremities, there is still no examination or opinion evidence connecting the diagnosis of small or large fiber neuropathy to decreased functionality in her hands.

Therefore, the ALJ did not commit harmful error in finding there was no medically determinable impairment affecting Plaintiff's hands.

### VI.   Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Lisa Diane Cooper.

IT IS SO ORDERED.

Dated:   **March 13, 2023**              /s/ Gary S. Austin
                                                   UNITED STATES MAGISTRATE JUDGE

---

[5] *See* National Institute of Neurological Disorders and Strike, *Peripheral Neuropathy Fact Sheet*, available at https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Peripheral-Neuropathy-Fact-Sheet ("Damage to large sensory fibers harms the ability to feel vibrations and touch, especially in the hands and feet. You may feel as if you are wearing gloves and stockings even when you are not").